# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| COMPUTER PROGRAMS & SYSTEMS, INC., *et al.*, | : : : | |
| Plaintiffs, | : : | |
| vs. | : : | CIVIL ACTION NO. 1:18-cv-112-TFM-N |
| TEXAS GENERAL HOSPITAL, *et al.*, | : : | |
| Defendants. | : : | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the *Motion to Dismiss Texas General Hospital and Texas General Hospital—VZRMC's Counterclaims and Incorporated Memorandum of Law*. Doc. 49, filed January 19, 2019. Pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiffs move the Court dismiss Defendants' counterclaims against them because the counterclaims are either not plausibly pled, not actionable in the present context, or both. *Id.* at 2-3. Having considered the motion and relevant law, the Court finds the motion to dismiss is due to be **GRANTED IN PART** and **DENIED IN PART**.

## I.  PARTIES

In this Memorandum Opinion and Order, Plaintiff/Counterclaim Defendant Computer Programs & Systems, Inc., will be referred to as "CPSI"; Plaintiff/Counterclaim Defendant Trubridge, L.L.C., will be referred to as "Trubridge"; and CPSI and Trubridge will be collectively referred to as "Plaintiffs." The Court will refer to Defendant/Counterclaim Plaintiff Texas General Hospital as "Texas General" and Defendant/Counterclaim Plaintiff Texas General Hospital-VZRMC's as "Van Zandt." The Court will collectively refer to Texas General and Van Zandt as "Defendants."

## II. JURISDICTION AND VENUE

The district court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332 (diversity).

The district court has personal jurisdiction over the claims in this action because CPSI and Trubridge both have their principal place of business in Mobile County, Alabama, which is within the Court's district. *See BNSF Ry. Co. v. Tyrrell*, -- U.S. --, 137 S. Ct. 1549, 1558, 198 L. Ed. 2d 36 (2017) (internal citations and quotation marks omitted) ("*Goodyear* and *Daimler* clarified that a court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State. The paradigm forums in which a corporate defendant is at home, explained, are the corporation's place of incorporation and its principal place of business."); *see also Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291-92 (11th Cir. 2000) (citations omitted) ("Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint. . . . General personal jurisdiction, on the other hand, arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated. The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state.").

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because CPSI and Trubridge have their principal places of business in this judicial district.

## III. FACTUAL AND PROCEDURAL BACKGROUND

On February 7, 2018, Plaintiffs originally filed their complaint in the Circuit Court of Mobile County. Doc. 1 ¶ 1. In Plaintiffs' complaint, they bring against Defendants two (2)

Alabama state law claims for breach of contract. Doc. 1-1 at 6-7.

On March 12, 2018, Defendants filed their notice of removal to this Court based on diversity of citizenship, which the Court orderd Defendants to amend to correct their jurisdictional pleadings. *See* Docs. 1, 5. Defendants filed their answer to the complaint on March 19, 2018, and their amended notice of removal on March 22, 2018. Docs. 7, 15. The Court denied Defendants' motion to transfer venue to the Northern District of Texas on August 7, 2018. *See* Docs. 16, 38.

On November 2, 2018, Defendants filed their Motion for Leave to Amend Pleadings to add defenses and counterclaims and amend their answer to the complaint, which the Court granted. Docs. 40, 46. On December 5, 2018, Defendants filed their amended answer, in which they brought against Plaintiffs Alabama state law counterclaims of breach of contract, negligence, wantonness, breach of warranty for services, breach of duty of good faith and fair dealing, breach of fiduciary duty, fraud or negligent misrepresentation, fraudulent concealment, fraudulent inducement, and estoppel. Doc. 47.

Plaintiffs filed the instant motion to dismiss counterclaims on December 19, 2018. Doc. 49. Defendants timely responded in opposition, to which Plaintiffs filed their reply. Docs. 51, 52. The Court finds oral argument unnecessary for resolution. Therefore, the motion is fully briefed and ripe for adjudication.

## IV. <u>STANDARD OF REVIEW</u>

Pursuant to Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint on the basis that the plaintiff has failed to state a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.

Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [*Twombly*, 550 U.S.] at 570, 127 S. Ct. [at] 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556, 127 S. Ct. [at] 1955."). Since a Fed. R. Civ. P. 12(b)(6) motion questions the legal sufficiency of a complaint, in assessing the merits of the motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., United States v. Gaubert*, 499 U.S. 315, 327, 111 S. Ct. 1267, 1276, 113 L. Ed. 2d 335 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990); *but see also Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1955) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, all factual allegations shall be construed in the light most favorable to the plaintiff. *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S. Ct. 1378, 1382, 103 L. Ed. 2d 628 (1989). Obviously, therefore, a district court may not resolve factual disputes when adjudicating a motion to dismiss. *Page v. Postmaster Gen. and Chief Exec. Officer of the U.S. Postal Serv.,* 493 F. App'x 994, 995 (11th Cir. 2012) (citing, among other cases, *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir. 1990), for the proposition that, under Fed. R. Civ. P. 12(b)(6), the existence of disputed material facts precludes a district court from granting a motion to dismiss). "'When considering a motion to dismiss . . . the court limits its consideration to the pleadings and all exhibits attached thereto.'" *Thaeter v. Palm Beach Cty. Sheriff's Office,* 449 F.3d 1342, 1352 (11th Cir. 2006) (quoting *Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam)); *see also Reese v. Ellis, Painter, Ratterree &*

*Adams, LLP,* 678 F.3d 1211, 1215-16 (11th Cir. 2012) ("Because the Ellis law firm's dunning letter and enclosed documents were attached to the Reeses' complaint as an exhibit, we treat them as part of the complaint for [Fed. R. Civ. P.] 12(b)(6) purposes.").

## V. DISCUSSION AND ANALYSIS

The Court will address Plaintiffs' arguments for the corresponding counterclaim in order.

### a. **Counterclaim 1 (Breach of Contract)**

In Defendants' first counterclaim, they allege Trubridge breached Section A(1) of Exhibit A to the Master Services Agreement because Trubridge failed to provide medical coding of all patient encounters, charge for observation and emergency department services, jointly establish a policy for updating a problem list, and provide hospital management with quarterly quality assurance reporting. Doc. 47 ¶ 84. Defendants allege CPSI breached the License and Equipment Agreement because CPSI withheld Defendants' access to software that Defendants need to operate their business, despite their payment for the software, and failed to provide service under certain agreements. *Id.* ¶ 85.

Plaintiffs argue Defendants admit in their allegations they failed to perform under the agreements at issue, and because they admitted such, they cannot demonstrate they performed under the agreements and their breach of contract claim fails. Doc. 49 at 4. In response, Defendants argue they were excused from their contractual obligations because Plaintiffs failed to perform their part of the agreements before Defendants' alleged breach. *See* Doc. 51 at 7.

Under Alabama law, "[i]n the ordinary breach of contract action, the claimant must prove: (1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *S. Med. Health Sys., Inc. v. Vaughn,* 669 So. 2d 98, 99 (Ala. 1995). "'Where [a party] has agreed under the contract to do a

particular thing, there is a breach and the right of action is complete upon [the party's] failure to do the particular thing he agreed to do.'" *Cunningham v. Langston, Frazer, Sweet & Freese, P.A.*, 727 So. 2d 800, 805 (Ala. 1999) (quoting *Seybold v. Magnolia Land Co.*, 376 So. 2d 1083, 1085 (Ala. 1979)). "'In order to establish that a defendant is liable for a breach of a bilateral contract, a plaintiff must establish that he has performed, or that he is ready, willing, and able to perform under the contract.'" *Beauchamp v. Coastal Boat Storage*, 4 So. 3d 443, 450 (Ala. 2008) (quoting *Winkleblack v. Murphy*, 811 So. 2d 521, 529 (Ala. 2001)).

Here, Defendants allege Plaintiffs breached the agreements at issue from at least March 2017 because Plaintiffs failed to adequately perform their contractual duties, while Defendants admit they ceased payments under the agreements in fall 2017. *See* Doc. 47 ¶¶ 16, 62-63; *see also id.* ¶¶ 64-79 (describing Plaintiffs' failures to perform contractual duties). Defendants also allege they "performed, tendered performance, or were excused from performing their contractual obligations" because of Plaintiffs' breach. *Id.* ¶ 81. Therefore, Defendants have properly alleged a breach of contract claim because, at the time of Plaintiffs' alleged breach, Defendants allege they performed under the agreements.

Plaintiffs' motion to dismiss Defendants' first counterclaim is denied.

b. **Counterclaims 2 (Negligence) and 3 (Wantonness)**

In Defendants' second and third counterclaims, they allege Plaintiffs were negligent when they breached their contractual duty to timely submit claims to payors for reimbursement of healthcare services that were provided by Defendants. Doc. 47 ¶¶ 87-90. Defendants further allege Plaintiffs breached their contractual duty with a reckless or conscious disregard of Defendants' rights. *Id.* ¶¶ 91-93.

Plaintiffs argue, under Alabama law, a tort has not been committed when a party fails to

perform a contractual obligation. Doc. 49 at 4-5. In response, Defendants argue Alabama law does provide, when a party performs a contractual obligation, the performance of the obligation may be negligent and give rise to a tort and, in any case, these counterclaims need factual development for the Court to determine whether Plaintiffs' performance of their contractual obligations was negligent or wanton. Doc. 51 at 8.

> In Alabama, "the line of distinction between actions in tort and contract is thin and often nebulous." *Hamner v. Mut. of Omaha Ins. Co.*, 270 So. 2d 87, 90 (Ala. Civ. App. 1972). Put simply, "the breach of contract in *not performing* the obligation there expressed, or not doing it in the way specified, is not in tort . . . [b]ut if [performance is undertaken], [the] *performance may be negligent*, giving rise to a tort." *Vines v. Crescent Transit Co.*, 85 So. 2d 436, 439 (Ala. 1955 ) (quotations omitted) (emphasis in original). In other words, there is a possibility that a negligent performance of a contractual duty will result in both a breach of contract and, possibly, a tort. *Hamner*, 270 So. 2d at 90. In these instances, involving misfeasance rather than nonfeasance, Alabama law requires courts to determine whether the action sounds in tort or contract by looking to the "gravamen of the complaint." *Id.* If the source of the duty is the "general duty of care owed to everyone," the action sounds in tort, but if "the duty allegedly breached arises from the contract," the action sounds in contract. *Cooper v. SW. Marine & Gen. Ins. Co.*, No 2:13-cv-1651-KOB, 2014 WL 769394, at *12-13 (N.D. Ala. Feb. 26, 2014). Ultimately, "a negligent failure to perform a contract . . . is but a breach of the contract." *Vines*, 85 So. 2d at 440.

*Killough v. Monkress*, 2018 WL 3641859, at *10, 2018 U.S. Dist. LEXIS 128846, at *23-24 (N.D. Ala. Aug. 1, 2018).

The court will look to the "gravamen of the complaint" to determine whether the source of the duty at issue is the "general duty of care owed to everyone" or "the duty allegedly breached arises from the contract." *Id.*, 2018 WL 3641859, at *10, 2018 U.S. Dist. LEXIS 128846, at *24. Since the Court is limited to examining the complaint in its inquiry, the Court declines Defendants' request to allow them to develop the facts for the Court to later determine whether Plaintiffs' actions were negligent or wanton. *See* Doc. 51 at 8. The Court determines Defendants' negligence and wantonness claims generally sound in contract because the allegations of the claims explicitly

reference the breach of duties that are owed pursuant to their agreements and do not reference an independently negligent action related to the breach.

Plaintiffs' motion to dismiss Defendants' second and third counterclaims is granted.

c. **Counterclaim 4 (Breach of Warranty for Services)**

In Defendants' fourth counterclaim, they allege Plaintiffs breached a warranty for services when they represented to Defendants certain characteristics of the services they would provide as part of the agreement between them, and Plaintiffs failed to perform those services. Doc. 47 ¶¶ 94-99.

Plaintiffs argue Alabama law does not recognize a cause of action for breach of warranty of services, while Defendants argue it does. *See* Doc. 49 at 5; Doc. 51 at 8-10.

At the outset, the Court notes it has not found in Alabama case law a cause of action for a breach of warranty for services. Generally, "[a]n action alleging a breach of warranty is a subset of a breach-of-contract claim." *Turner v. Westhampton Court, L.L.C.*, 903 So. 2d 82, 90 (Ala. 2004). The cases to which Defendants cite to support their argument are in the context of services that were provided by architects, contractors, and doctors.

For example, Defendants cite to *Mitchell v. Richmond*, 754 So. 2d 627 (Ala. 1999), to support their argument. *See* Doc. 51 at 9. Specifically, Defendants emphasize a statement which reads, "[a]ny claim made concerning the quality of the services provided under the contract must be a warranty claim." *Mitchell*, 754 So. 2d at 629. In *Mitchell*, an architectural malpractice action, the Alabama Supreme Court analyzed whether the claim at issue was timely filed pursuant to an Alabama legislative act that imposed a single period of limitation for civil actions that were brought against architects, engineers, and builders. A breach of warranty for services is not directly mentioned in *Mitchell*.

Defendants also cite to *Pennsylvania National Mutual Casualty Insurance Co. v. St. Catherine of Siena Parish*, 790 F.3d 1173 (11th Cir. 2015) [hereinafter Pennsylvania National], to support their argument. Specifically, Defendants cite *Pennsylvania National* for the proposition that "Alabama law creates an implied warranty that a contractor will 'use reasonable skill in fulfilling his contractual obligations.'" *Id.* at 1178 (quoting *Blackmon v. Powell*, 132 So. 3d 1 (Ala. 2013)). Again, a breach of warranty for services is not directly mentioned in *Pennsylvania National*.

Under Alabama law, architects' and contractors' work are subject to certain implied warranties. "[U]nder the proper circumstances, an architect impliedly warrants that his plans and specifications for the construction of a building are sufficient to make the structure reasonably fit for its intended purpose." *Fed. Mogul Corp. v. Universal Constr. Co.*, 376 So. 2d 716, 725 (Ala. Civ. App. 1979) (citing *U.S. Fid. & Guar. Co. v. Jacksonville State Univ., Ala.*, 357 So. 2d 952 (1978)). For contractors, "Alabama law recognizes an implied warranty of workmanship, i.e., a duty that a contractor will use reasonable skill in fulfilling [his] contractual obligations." *Nationwide Mut. Fire Ins. Co. v. David Grp., Inc.*, -- So. 3d --, 2019 WL 2240382, at *3, 2019 Ala. LEXIS 52, at *7 (Ala. May 24, 2019) (internal quotation marks and citations omitted). Such implied warranties are extraneous to those found in the Uniform Commercial Code ("UCC").

Finally, Defendants cite to *Skelton v. Druid City Hosp. Bd.*, 459 So. 2d 818 (Ala. 1984), to support their argument. In *Skelton*, the Alabama Supreme Court analyzed whether the UCC applied where the individual plaintiff brought a breach-of-warranty claim for a suturing needle that broke in the plaintiff's body during an operation. *See Skelton*, 459 So. 2d at 821-23. The Alabama Supreme Court concluded the transaction at issue was both a service transaction and a "transaction in goods" that would subject the claim to Article 2 of the UCC, ALA. CODE §§ 7-2-

101 to 725. *See Skelton*, 459 So. 2d at 821. Under the UCC, certain implied warranties would be applicable to the transaction. *See* ALA. CODE §§ 7-2-314 to 315. In *Skelton*, the claim was based on an implied warranty of fitness for a particular purpose. *See Skelton*, 459 So. 2d at 821. However, much like *Mitchell* and *Pennsylvania National*, a breach of warranty for services is not directly mentioned in *Skelton*.

Since the Court cannot find in Alabama case law authority that supports a cause of action for breach of warranty for services and Defendants have not cited to a case that directly references such, the Court finds Defendants' claim for breach of warranty for services fails as a matter of law.

Plaintiffs' motion to dismiss Defendants' fourth counterclaim is granted.

### d. **Counterclaim 5 (Breach of Duty of Good Faith and Fair Dealing)**

In Defendants' fifth counterclaim, they allege Plaintiffs, because of the special relationship between the parties, breached a duty of good faith and fair dealing when they submitted claims to the wrong payors for reimbursement of healthcare services that were provided by Defendants, failed to timely file claims for reimbursement and/or appeals, and failed or refused to perform their duties. Doc. 47 ¶¶ 100-103.

Plaintiffs argue, because the agreements at issue between the parties are not insurance contracts, Alabama law does not recognize a cause of action for breach of duty of good faith and fair dealing, while Defendants argue it does. *See* Doc. 49 at 6; Doc. 51 at 10-11.

In *Grant v. Butler*, 590 So. 2d 254 (Ala. 1991), the Alabama Supreme Court directly addressed the issue:

> Although every contract contains either an express or an implied covenant that the parties will act in good faith in performing the contract, in Alabama only insurance contracts give rise to a duty imposed by law on which a tort claim for bad faith performance can be based. We have consistently declined in the past, and we decline again today, to extend to the area of general contract law the tort of bad faith that we have recognized in the context of insurance contract cases. *See Harrell*

*v. Reynolds Metals Co.*, 495 So. 2d 1381, 1388 (Ala. 1986).

*Grant*, 590 So. 2d at 256; *see also Breaking Free, LLC v. JCG Foods of Ala., LLC*, 2019 WL 1513978, at *7, 2019 U.S. Dist. LEXIS 59630, at *19-20 (N.D. Ala. Apr. 8, 2019) (quoting *Grant* for the proposition cited, *supra*, at 10-11); *Hall v. Nationstar Mortg. LLC*, 2016 WL 3971428, at *8, 2016 U.S. Dist LEXIS 96488, at *23-24 (N.D. Ala. July 25, 2016) (finding a claim for a breach of the implied covenant of good faith and fair dealing in a mortgage loan dispute fails as a matter of law because Alabama law does not recognize such a cause of action outside the insurance context); *Whitney Bank v. Murphy*, 2013 WL 1191235, at *6, 2013 U.S. Dist. LEXIS 40046, at *19-20 (S.D. Ala. Mar 22, 2013) (quoting *Grant* for the proposition cited, *supra*, at 10-11).

Since the agreements between the parties are not insurance contracts, Defendants' counterclaim of breach of duty of good faith and fair dealing fails as a matter of law.

Plaintiffs' motion to dismiss Defendants' fifth counterclaim is granted.

**d.** **Counterclaim 6 (Breach of Fiduciary Duty)**

In Defendants' sixth counterclaim, they allege Plaintiffs owed Defendants a fiduciary duty that they breached when Plaintiffs submitted claims for reimbursement to the wrong payors, failed to timely file claims for reimbursements and/or appeals, and expressly and/or impliedly failed and/or refused to perform their duties. Doc. 47 ¶¶ 104-105.

Plaintiffs argue Defendants cannot prove Plaintiffs owed them a fiduciary duty and the agreements at issue specifically disclaimed any type of fiduciary duty between the parties. Doc. 49 at 7-8. Defendants argue they were completely dependent on Plaintiffs to maintain their financial stability, which created the confidential relationship that is necessary to support a breach of fiduciary duty claim. Doc. 51 at 12.

The elements of a breach-of-fiduciary-duty claim are: "(1) the existence of a fiduciary duty

between the parties; (2) the breach of that duty; and (3) damages suffered as a result of the breach."
*Regions Bank v. Lowrey*, 101 So. 3d 210, 219 (Ala. 2012) (citing *Hensley v. Poole*, 910 So. 2d 96, 106 (Ala. 2005)). Alabama law defines a fiduciary or confidential relationship as:

> "[O]ne in which one person occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's interests, or when one person has gained the confidence of another and purports to act or advise with the other's interest in mind; where trust and confidence are reposed by one person in another who, as a result, gains an influence or superiority over the other; and it appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side, there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed; in both an unfair advantage is possible. It arises in cases in which confidence is reposed and accepted, or influence acquired, and in all the variety of relations in which dominion may be exercised by one person over another."

*DGB, LLC v. Hinds*, 55 So. 3d 218, 233 (Ala. 2010) (quoting *Bank of Red Bay v. King,* 482 So. 2d 274, 284 (Ala. 1985)).

In Defendants' counterclaims, they allege:

> [Plaintiffs] each contract with Providers, purporting to act as a partner agency and provide tools that help meet the everyday financial challenges within the [Revenue Cycle Management ("RCM")] process. [Plaintiffs] each claim to tailor products and services to the individualized needs of the Provider. Plaintiffs integrate their services and products into healthcare systems with the promise of improved cash flow, quality reporting and actionable financial data, making the Provider fully dependent on [Plaintiffs] for continued financial well-being.

Doc. 47 ¶ 53. Further:

> Defendants contracted with [Plaintiffs] for services, including RCM, relying to their detriment on [Plaintiffs'] representations of their knowledge, know-how, expertise, customized systems and tools, among other things. To that effect, the Parties entered in to a series of "Agreements" from December 2011 to March 2015.

*Id.* ¶ 54.

Based on Defendants' allegations, the Court finds they have pled enough to state a claim for breach of fiduciary duty.

Plaintiffs argue the agreements at issue disclaim any alleged fiduciary duty and Defendants

failed to address this argument. *See* Doc. 47 at 7. However:

> Express disclaimers of agency do not necessarily eliminate the existence of an agency relationship:
>
> > "The relation which the law calls agency does not depend upon the intent of the parties to create it, nor their belief that they have done so. To constitute the relation, there must be an agreement, but not necessarily a contract, between the parties; if the agreement results in the factual relation between them to which are attached the legal consequences of agency, an agency relationship exists although the parties did not call it agency and did not intend the legal consequences of the relationship to follow."
>
> Restatement (2d) of Agency § 1 cmt. b (1958). Otherwise, parties could enjoy the benefits of an agency relationship free of legal consequences simply by the insertion of a disclaimer clause in the agency contract.

*Carr v. StillWaters Dev. Co., L.P.*, 83 F. Supp. 2d 1269, 1279 (M.D. Ala. 1999). While the determination of a duty is a question of law for the Court to decide, *Aliant Bank v. Four Star Invs., Inc.*, 244 So. 3d 896, 908 (Ala. 2017) (citing *Ex parte BASF Constr. Chems., LLC*, 153 So. 3d 793, 801-02 (Ala. 2013)), the nature of the parties' relationship will be determined by the facts that will be developed.

Plaintiffs' motion to dismiss Defendants' sixth counterclaim is denied.

e.  **Counterclaims 7 (Fraud or Negligent Misrepresentation), 8 (Fraudulent Concealment), and 9 (Fraudulent Inducement)**

In Defendants' seventh counterclaim, they allege Plaintiffs submitted flawed reports, purported to have knowledge and skill to perform their duties under the agreements at issue, and knowingly made false statements or omitted materials facts-or alternatively, represented without knowledge as to the truth or falsity of the representation, or represented under circumstances in which they should have known of its falsity-which induced Defendants to act and suffer injury because of their reliance on Plaintiffs' representations. Doc. 47 ¶¶ 106-107. In Defendants' eighth counterclaim, they allege, under the agreements at issue, Plaintiffs had a duty to disclose certain

facts, but failed to do so, which induced Defendants to perform under the agreements and caused injury. *Id.* ¶¶ 108-109. In Defendants' ninth counterclaim, they allege Plaintiffs claimed to have knowledge and skill to perform their duties pursuant to the agreements at issue, but Plaintiffs knowingly made false statements of material fact with the intent that the representations induce Defendants enter into the agreements with Plaintiffs, and Defendants were harmed by their reliance. *Id.* ¶¶ 110-111.

Plaintiffs argue Defendants' allegations of fraud do not comply with Fed. R. Civ. P. 9(b)'s particularity requirement for fraud claims and Defendants' fraud claims are based on their allegations that Plaintiffs failed to perform pursuant to the agreements at issue, and such a failure to perform a contractual promise cannot give rise to a fraud claim. *See* Doc. 49 at 8-10. In response, Defendants argue Plaintiffs did not address Defendants' alternative negligent misrepresentation claim in their seventh counterclaim, Defendants pled enough information about the alleged fraud to satisfy Fed. R. Civ. P. 9(b), and a single transaction can support an award of damages for both breach of contract and fraud under Alabama law. *See* Doc. 51 at 12-16.

Defendants' seventh, eighth, and ninth counterclaims are all based on fraud. "'The elements of fraud are (1) a misrepresentation of a material fact, (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) that was reasonably relied on by the plaintiff under the circumstances, and (4) that caused damage as a proximate consequence.'" *Allstate Ins. Co. v. Eskridge*, 823 So. 2d 1254, 1258 (Ala. 2001) (quoting *Brushwitz v. Ezell*, 757 So. 2d 423, 429 (Ala. 2000)).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). The Court of Appeals for the Eleventh Circuit

has stated its views on what Fed. R. Civ. P. 9(b) requires a plaintiff to plead and what purpose the rule serves:

> The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior. The application of [Fed. R. Civ. P] 9(b), however, must not abrogate the concept of notice pleading. [Fed. R. Civ. P.] 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal citations and quotations marks omitted). Fed. R. Civ. P. 9(b)'s particularity rule also applies to negligent misrepresentation claims. *Lamm v. State St. Bank and Tr.*, 749 F.3d 938, 951 (11th Cir. 2014) (citing *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1511 (11th Cir. 1993)).

Based on Defendants' pleadings, Defendants failed to satisfy Fed. R. Civ. P. 9(b)'s particularity rule and pled only general facts to support their fraud-based and negligent-misrepresentation counterclaims. *See* Doc. 51 at 13; Doc. 47 ¶¶ 54, 61, 67, 69, 74-75, 106-07.

> [Fed. R. Civ. P.] 9(b)'s heightened pleading standard may be applied less stringently, however, when specific "factual information [about the fraud] is peculiarly within the defendant's knowledge or control." *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga., Inc.*, 755 F. Supp. 1040, 1052 (S.D. Ga.), *reconsideration granted*, 755 F. Supp. 1055, 1058-59 (S.D. Ga. 1990) (finding that [Fed. R. Civ. P.] 9(b) applies to the FCA as amended in 1986); *see also United States ex rel. Russell v. Epic Healthcare Mgmt. Grp.*, 193 F.3d 304, 308 (5th Cir. 1999) ("We have held that when the *facts* relating *to* the alleged fraud are peculiarly within the perpetrator's knowledge, the [Fed. R. Civ. P.] 9(b) standard is relaxed . . . ."). In that instance, the plaintiff may plead based upon information and belief, *Epic Healthcare Mgmt. Grp.*, 193 F.3d at 308, provided that she "accompany[ies] [her] legal theory with factual allegations that maker [her] theoretically viable claim plausible," *In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) (emphasis omitted) (internal quotation marks omitted); *see also* [*United States ex rel. Clausen v.*] *Lab Corp. of Am.*, 290 F.3d [1301,] 1314 [(11th Cir. 2002), *cert. denied*, 537 U.S. 1105, 123 S. Ct. 870, 154 L. Ed. 2d 774 (2003)] (recognizing that "a more lenient pleading

standard" is appropriate under [Fed. R. Civ. P.] 9(b) when "evidence of fraud [i]s uniquely held by the defendant" provided that "the complaint . . . set[s] forth a factual basis for such belief" (internal quotation marks omitted)).

*United States ex rel. Hill v. Morehouse Med. Assocs.*, 2003 WL 22019936, at *3, 2003 U.S. App. LEXIS 27956, at *10-*13 (11th Cir. Aug. 15, 2003) (per curiam) (footnote omitted).

The Court finds Defendants have not alleged enough to avail themselves of the less stringently applied pleading standard for Fed. R. Civ. P. 9(b). Defendants have not alleged factual information that is peculiarly within Plaintiffs' knowledge or control that would relax Fed. R. Civ. P. 9(b)'s pleading standard.

Therefore, Plaintiffs' motion to dismiss Defendants' seventh, eighth, and ninth counterclaims is granted.

**f.** **Counterclaim 10 (Estoppel)**

In Defendants' tenth counterclaim, they allege Plaintiffs willfully or negligently misrepresented facts, upon which Defendants relied to their detriment. Doc. 47 ¶¶ 112-13.

Plaintiffs argue Defendants have failed to state facts upon which their promissory estoppel counterclaim rests and they cannot recover under their counterclaim because there are valid contracts between the parties. *See* Doc. 49 at 10-12. In response, Defendants argue they pleaded enough factual content to support their counterclaim, and estoppel is not precluded because the counterclaim is based on Plaintiffs' pre-contract misrepresentations. *See* Doc. 51 at 16-17.

For Defendants to prove their counterclaim of promissory estoppel, they must show: "(1) that [Plaintiffs] made a misrepresentation in the form of a promise, (2) that the misrepresentation concerned a material existing fact, (3) that [Defendants] relied on the misrepresentation, (4) that the reliance proximately caused the injury or damage alleged, and (5) that when [Plaintiffs] made the promise, [they] intended not to perform the act promised, but intended to deceive

[Defendants]." *Aldridge v. DaimlerChrysler Corp.*, 809 So. 2d 785, 795 (Ala. 2001) (citing *Ex parte Grand Manor, Inc.*, 778 So. 2d 173 (Ala. 2000)).[1]

Here, Defendants argue their promissory estoppel counterclaim is based on Plaintiffs' pre-contract representations; however, Defendants have not distinguished between the damages incurred from Plaintiff's alleged pre-contract misrepresentations and those they incurred from Plaintiffs' alleged breach of contract. Defendants allege: "Defendants contracted with CPSI and TruBridge for services, including RCM, relying to their detriment on CPSI and TruBridge's representations of their knowledge, know-how, expertise, customized systems and tools, among other things. To that effect, the Parties entered into a series of 'Agreements' from December 2011 to March 2015." Doc. 47 ¶ 54. Defendants' pleadings, coupled with the fact that Defendants admit in their first amended answer the parties entered into a set of contractual agreements, *compare* Doc. 1-1 ¶¶ 10-14, 16 *with* Doc. 47 ¶¶ 10-14, 16, show any alleged misrepresentations by Plaintiffs resulted in a contract between the parties and the pleadings do not state promissory-estoppel-reliance damages that are independent from any breach-of-contract damages. Therefore, Defendants have not stated a claim for promissory estoppel.

Defendants' argument in the alternative that if the Court finds the contracts between the parties are unenforceable, or there was not consideration, their counterclaim of promissory estoppel is viable, is also without merit. As to whether the Court may find unenforceable the contracts between the parties, "'estoppel cannot operate to create binding effect against a party under circumstances which would not sustain a contract if one had been made.'" *Aldridge*, 809 So. 2d at 794 (quoting *Bates v. Jim Walter Res., Inc.*, 418 So. 2d 903, 906 (Ala. 1982)). As to

---

[1] Here, the Court substitutes Plaintiffs and Defendants as appropriate based on the fact that these are counterclaims.

whether the Court may find there was not valid consideration to create an enforceable contract, Defendants admit in their first amended answer the parties entered into a set of contractual agreements. *Compare* Doc. 1-1 ¶¶ 10-14, 16 *with* Doc. 47 ¶¶ 10-14, 16.

Plaintiffs' motion to dismiss Defendants' tenth counterclaim is granted.

## V. CONCLUSION

Based on the foregoing discussion and analysis, Plaintiffs' Motion to Dismiss Texas General Hospital and Texas General Hospital—VZRMC's Counterclaims and Incorporated Memorandum of Law is **GRANTED in part and DENIED in part**. Plaintiffs' motion is **GRANTED** as to Defendants' second, third, fourth, fifth, seventh, eighth, ninth, and tenth counterclaims and **DENIED** as to Defendants' first and sixth counterclaims.

**DONE** and **ORDERED** this the 12th day of September 2019.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE